

1
2
3
4
5
6
7
8   **UNITED STATES DISTRICT COURT**
9   **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   ARNOLD C. BACON, JR.,                          Civil No.   05cv0310 BTM (PCL)
12                                    Plaintiff,
13
14              vs.                                  **ORDER GRANTING IN PART, AND
                                                     DENYING IN PART, DEFENDANTS'
15                                                   MOTION FOR SUMMARY
                                                     JUDGMENT [Doc. No. 65]
16                                                   PURSUANT TO FED.R.CIV.P. 56**
     WILLIAM B. KOLENDER, San Diego
17   Sheriff, and COUNTY OF SAN DIEGO,
18                                    Defendants.
19

20                                        **I.**

21                            **Procedural Background**

22          This matter comes before the Court on Defendants' Motion for Summary Judgment

23   pursuant to FED.R.CIV.P. 56 [Doc. No. 65].  The Court has  considered the papers filed in

24   support of Defendants' motion, Plaintiff's Opposition, Defendants' Reply, as well as all

25   relevant pleadings and documents in the Court's file.  For the following reasons, the Court

26   grants in part, and denies in part, Defendants' Motion.

27   ////

28   ////

## II.

## Procedural History

Before the Court is Plaintiff Arnold Bacon's First Amended Complaint ("FAC"), filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983 [Doc. No. 45].  On December 8, 2006, Defendants filed a Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 65].  On December 18, 2006, the Court advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[1]  After granting an enlargement of time to respond to Defendants' Motion, Plaintiff filed his Opposition [Doc. No. 76], to which Defendants have Replied [Doc. No.86].[2]  Moreover, Plaintiff's First Amended Complaint is verified under penalty of perjury.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under FED.R.CIV.P. 56.).  This matter has been submitted on the papers for determination without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1.

## III.

## Factual Allegations[3]

From March 20, 2003 to April 24, 2003, Plaintiff was temporarily moved from Atascadero State Hospital ("Atascadero") to the San Diego Central Detention Facility ("CDF"), a correctional facility operated by the San Diego County Sheriff's Department.  However, Plaintiff only spent a few hours at CDF and spent the majority of his time housed at George

---

[1]  *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'"  *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)).

[2]  While this case was randomly referred to the Honorable Magistrate Judge Peter C. Lewis pursuant to 28 U.S.C. § 636(b)(1)(B) for disposition, the Court has determined that a Report and Recommendation regarding the disposition of Defendants' pending Motion for Summary Judgment is unnecessary.  *See* S. D. CAL. CIVLR 72.3(a)

[3]  The factual allegations are taken from Plaintiff's First Amended Complaint and deposition testimony.  Defendants do not present the Court with any evidence or factual allegations to contradict the facts as alleged by Plaintiff.

2

1   Bailey Detention Facility ("GBDF") which is also operated by the San Diego County Sheriff's

2   Department. (*See* FAC at 1, 4; Pl.'s Depo. at 10.)

3       San Diego County Sheriff Deputies strip searched Plaintiff upon arrival to CDF, again

4   when he was transported to GBDF, each time he was transported from GBDF to court for his

5   civil commitment hearings, and at least one time each week while housed at GBDF. (*See* FAC

6   at 3; Pl.'s Depo. at 19-20.)  Specifically, Plaintiff claims that during these searches he was

7   required to "remove all his clothes, shake his hair out with his fingers, run a finger around his

8   mouth, pull his penis up for inspection," and "bend over and put his buttocks apart while

9   coughing three times." (FAC at 4.)  Defendants believed these searches to be "proper according

10  to County Jail policies that were in effect in 2003."  (Defs.' Motion at 2; Defs.' Exhibit "C,"

11  Declaration of Lieutenant Wayne Brooks at ¶ 8.)  On at least two occasions, Plaintiff's strip

12  searches were conducted in the view of female correctional officers.  (*See* Pl.'s Depo. at 23.)

13  Plaintiff also maintains that he was forced to use the bathroom and shower in the line of sight

14  of female correctional officers. (*See* FAC at 7.)

15      In addition, Plaintiff alleges that he was handcuffed to a penal detainee during

16  transportation to and from GBDF and on one occasion he was "spat" upon by a penal detainee

17  on the bus.  (*Id.* at 8.)  Because Plaintiff's movements were constrained by the handcuffs, he

18  was unable to remove the spit from his neck for over thirty minutes.  (*Id.*)

19      When Plaintiff arrived at the CDF, jail officials determined that he would not be

20  permitted to keep all the medicines that had been prescribed for him at Atascadero. (*Id.* at 5.)

21  Specifically, Plaintiff claims to have an "itching" problem, as well as the need for an inhaler.

22  (*Id.*)  Defendants acknowledge that some of Plaintiff's medications were not stocked at GBDF

23  but he was prescribed Benadryl along with a medication for dry skin.  (*Id.*, Pl.'s Depo. at 25-30;

24  Defs.' Exhibit "E," Declaration of Dr. Earl Goldstein at ¶¶ 5-7.)  While Plaintiff was not

25  permitted to have his inhaler with him at all times, Defendants brought the inhaler to Plaintiff

26  every twelve (12) hours. (Pl.'s Depo. at 31.)  Plaintiff did not have any "breathing attacks" at

27  GBDF.  (*Id.* at 32.)  Plaintiff also contends that he was not permitted to have ear plugs while

28

05cv0310

1    he was housed at GBDF, and as a result, he was not able to get as much sleep as he normally

2    would while housed at Atascadero.  (*Id.* at 30.)

3        Finally, when Plaintiff attempted to use the telephone to call his attorney, a warning sign

4    was placed on the telephone which stated that "the telephones in this area may be monitored or

5    recorded" and that inmates "have no expectation of privacy when speaking on the phones."

6    (*See* FAC at 6; *see also* Pl.'s Depo. at 33-34.)

7                                              **IV.**

8                                    **Evidentiary Objections**

9        Plaintiff has filed two "motions to suppress" which the Court liberally construes as

10   evidentiary objections to Defendants' Motion for Summary Judgment.  In Plaintiff's "Notice of

11   Motion and Motion to Suppress," [Doc. Nos. 71, 73], Plaintiff argues that his classification as

12   a sexually violent predator ("SVP") is not relevant to this action.  The Court disagrees.  The

13   nature of Plaintiff's status is directly relevant to current Ninth Circuit law that specifically

14   addresses civil rights conditions of confinement claims brought by SVPs.  *See Jones v. Blanas*,

15   393 F.3d 918 (9th Cir. 2004); *see also Hydrick v. Hunter*, __ F.3.__, 2007 WL 2445998 (9th

16   Cir. Aug, 30, 2007)..  Thus, Plaintiff's objections are overruled and Plaintiff's Motions to

17   Suppress are DENIED.

18                                              **V.**

19             **Motion for Summary Judgment per FED.R.CIV.P. 56(c)**

20       Defendants seek summary judgment on the grounds that there are no genuine issues of

21   material facts to support Plaintiff's constitutional claims, and regardless of any violation, they

22   are entitled to qualified immunity as to certain claims.

23       **A.    Standard of Review**

24       Summary judgment is appropriate if there is no genuine issue as to any material fact, and

25   the moving party is entitled to a judgment as a matter of law.  FED.R.CIV.P. 56(c).  The moving

26   party has the initial burden of demonstrating that summary judgment is proper.  *Adickes v. S.H.*

27   *Kress & Co.*, 398 U.S. 144, 157 (1970)   The moving party must identify the pleadings,

28   depositions, affidavits, or other evidence which the moving party "believes demonstrates the

absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.  To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S. at 323).

### B.    Defendant Kolender - Individual Liability

There are only two named Defendants in this action, Sheriff Kolender and the County of San Diego.  Before the Court can analyze Plaintiff's claims, it must be decided whether Defendant Kolender has any personal liability with respect to Plaintiff's Constitutional claims. In his First Amended Complaint, Plaintiff has indicated that he intends to sue Sheriff Kolender in his individual capacity.  (FAC at 1.)   A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (1988)

Thus, Plaintiff must allege personal acts by Defendant Kolender which have a direct causal connection to the constitutional violation at issue.  *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986).  Section 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative

1    acts, or failure to perform legally required duties, cause the deprivation of the plaintiff's

2    constitutionally protected rights. *Duffy*, 588 F.2d at 743.

3         Defendants argue that Sheriff Kolender is entitled to summary judgment in his individual

4    capacity because "Plaintiff has not offered any evidence that Sheriff Kolender was personally

5    responsible for any acts or omissions regarding Plaintiff's custody in County Jail." (Defs.' Mot.

6    at 9.)  However, Plaintiff does allege that Sheriff Kolender implemented the policies which he

7    alleges violated his constitutional rights.  (FAC at 3-10.)   Defendants, as the moving party,

8    have the initial burden of demonstrating the absence of a genuine issue of material fact, not the

9    Plaintiff. *See Celotex*, 477 U.S. at 323.  Defendants do not dispute that Sheriff Kolender is the

10   one who promulgated the policies that are at issue in this matter.  Accordingly, the Court finds

11   there is a triable issue of material fact as to Sheriff Kolender's personal liability and **DENIES**

12   the motion for summary judgment brought by Defendant Kolender on this ground.

13       **C.    Defendant Kolender and the County of San Diego - Official Capacity**

14        Plaintiff is also seeking to hold Defendant Kolender liable in his official capacity as the

15   Sheriff for the County of San Diego.  When a claim is made against a government official in

16   their official capacity, the claim is treated as one against the public entity which in this case is

17   the County of San Diego. *Kentucky v. Graham*, 473 U.S. 159 (1985).  To succeed in his § 1983

18   claims against Sheriff Kolender in his official capacity, Plaintiff must present evidence

19   sufficient to show the existence of a genuine issue of material fact which could establish that:

20   (1) he was deprived of a constitutional right; (2) the county had a policy, or a longstanding

21   custom so persistent and widespread that it constitutes a permanent and well-settled policy; (3)

22   the policy amounted to deliberate indifference to plaintiff's constitutional right; and (4) the

23   policy was the "moving force behind the constitutional violation." *Van Ort v. Estate of*

24   *Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996); *Board of the County Commissioners v. Brown*, 520

25   U.S. 397, 402-04 (1997); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  In *Monell v.*

26   *Department of Social Services*, 436 U.S. 658, 694 (1978), the United States Supreme Court held

27   that "a local government may not be sued under § 1983 for an injury inflicted solely by its

28

                                          6

1   employees or agents.  Instead, it is when execution of a government's policy or custom . . .

2   inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*

3   Defendant County of San Diego argues that they cannot be held liable under *Monell*

4   because the policies at issue in this case are "jail" policies, not County policies.  (*See* Defs.'

5   Mot at 12-13.)  Moreover, Defendant County of San Diego contends "Plaintiff must not only

6   present this Court with the applicable law showing who the final policymakers were, but must

7   furnish factual proof showing how the power was exercised." (Defs.' Mot. at 12.)  The Court

8   finds that relevant Ninth Circuit case law has already established that the policies of the Sheriff

9   for the County of San Diego are policies directly attributable to the County of San Diego for

10   purposes of *Monell* liability.  *See Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir.  2001).

11   In *Streit*, the Ninth Circuit held, after analyzing California's constitution, codes and case law,

12   that "when the Sheriff . . . performed the function of 'oversight and management of the local

13   jail," the Sheriff "acts for the County,' and not the state . . . as a result, the County can be liable"

14   for the unconstitutionality of the Sheriff's policies.  *Id.* at 561.  Moreover, the Ninth Circuit has

15   held, since the *Streit* decision, that the actions of a California sheriff are attributable to the

16   County for purposes of 42 U.S.C. § 1983.  *See Cortez v. County of Los Angeles*, 294 F.3d 1186

17   (9th Cir. 2002).  The Court sees no difference between the Sheriff for the County of Los

18   Angeles and the Sheriff for the County of San Diego for *Monell* liability purposes and

19   Defendants have not distinguished these Ninth Circuit opinions.

20   Thus, in this case, where the Court finds that there are genuine issues of material fact as

21   to whether the policies of Sheriff Kolender violated Plaintiff's constitutional rights, the County

22   of San Diego could be held liable as well. Accordingly, the County of San Diego's Motion for

23   Summary Judgment of Plaintiff's claims based on the claim that there are no *Monell* allegations

24   of unconstitutional policies or procedures is **DENIED**.

25   In finding that both the County of San Diego and Sheriff Kolender in his official capacity

26   may be held liable, the Court must then decide whether Sheriff Kolender's policies regarding

27   strip searches, medical care, privacy for detainees, transportation of detainees, and equal

28

7

05cv0310

1  protection violated Plaintiff's constitutional rights.  Thus, the Court will analyze these claims

2  individually.

3          **D.      Ex Post Facto/Double Jeopardy Claims**

4          Defendants move for summary judgment of Plaintiff's Ex Post Facto and Double

5  Jeopardy claims.  In Plaintiff's Opposition, he indicates that he "does not oppose Defendants'

6  assertions as to [Plaintiff's] Double Jeopardy and Ex Post Facto Claims."  (Pl.'s Opp'n at 17.)

7  Based on Plaintiff's statement of non-opposition, the Court **GRANTS** Defendants' Motion for

8  Summary Judgment as to Plaintiff's Ex Post Facto and Double Jeopardy claims.

9          **E.      Fourth Amendment claims**

10         Defendants move for summary judgment of Plaintiff's "Count 1" in which he claims that

11 his Fourteenth Amendment rights were violated when he was strip searched on a number of

12 occasions.  (*See* FAC at 4.)  The Ninth Circuit has recently held that unreasonable strip search

13 claims brought by sexual offenders civilly confined under California's Sexually Violent

14 Predator Act ("SVPA") are properly brought under the Fourth Amendment rather than the

15 Fourteenth Amendment.  *See Hydrick*, 2007 WL 2445998, *at 10-11; *see also Albright v.*

16 *Oliver*, 510 U.S. 266, 273 (1994).  The Fourth Amendment "right to be secure against

17 unreasonable searches and seizures . . .  certainly extends to [Sexually Violent Predators]."

18 *Hydrick*, 2007 WL 2445998, at *10-11.

19         Plaintiff claims that the Sheriff's policy of strip searching SVPs on multiple occasions

20 and in front of female jail officers was unreasonable and thus, violated his constitutional rights.

21 It "stands to reason that an individual detained awaiting civil commitment proceedings is

22 entitled to protections at least as great as those afforded to a civilly committed individual and

23 at least as great as those afforded to an individual accused but not convicted of a crime." *Jones*,

24 393 F.3d at 932.  Therefore, in considering Plaintiff's claims regarding the reasonableness of

25 the strip searches, the Court will look to established case law as it pertains to pretrial detainees.

26 Courts have long recognized that the constitutional rights of pretrial detainees may be limited

27 in the interests of jail institutional security and order. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979);

28 *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

                                        8

In the context of a pretrial detainee search which does implicate a privacy right, the Supreme Court has developed a balancing test to evaluate the reasonableness of the search. *Bell*, 441 U.S. at 559. This test weighs the prison's security and penological needs against the pretrial detainee's right to be free from unreasonable searches. *Id.* Factors to be considered in the balancing process include: 1) the scope of the particular intrusion; 2) the manner in which the search is conducted; 3) the justification for initiating the search; and, 4) the place in which the search is conducted. *Id.* Applying these factors, the Court finds that a genuine issue of material fact exists to show that Plaintiff's Fourth Amendment rights were violated.

The first two *Bell* factors involve the scope and manner of the search. *Id.* Plaintiff argues that the searches were often conducted in public and at times, in the presence of female jail officials. (*See* FAC at 4; Pl.'s Depo at 11.) Defendants do not dispute Plaintiff's claims with regard to the nature or amount of strip searches to which he was subjected. Instead, Defendants argue that Plaintiff "cannot show that any of the searches he was subjected to during his month of confinement were in violation of the jail's policy at the time or were meant to be punitive towards him." (*See* Defs.' Mot. at 14.) In support of this argument, Defendants attach as an exhibit, the Declaration of Wayne Brooks, Lieutenant in Standards & Compliance in the Detention Services Bureau of the San Diego County Sheriff's Department. (*See* Defs.' Ex. C.) Attached to Lieutenant Brooks declaration is the "San Diego County Department Detention Services Bureau Policy and Procedure I.53" as it relates to inmate searches and was in effect at the time of the alleged strip search allegations. (*Id.*, Exhibit "2.")

A review of this policy shows that it was violated by the jail personnel who conducted the strip searches. The policy states, in part, "[a]ll persons conducting or otherwise present during **a strip search or visual or physical body cavity search** shall be of the same sex as the inmate being searched, except for physicians or licensed medical personnel." ( Brooks Decl., Exhibit "2," Manual of Policies and Procedures, Section I.53.IV.A.4 dated Jan. 18, 2002 (emphasis original)). Here, Defendants do not provide any evidence to dispute Plaintiff's claims that there were females present during the searches nor do they present the Court with any evidence that these female officers were either physicians or some other type of licensed

1    medical personnel.  Accordingly, a plain reading of this strip search procedure would indicate

2    a violation of the policy by Jail officials when they conducted strip searches in the presence of

3    members of the opposite sex.  Thus, while individual officers may have violated the policies

4    of the Jail, there is no evidence to demonstrate that Sheriff Kolender was ever present during

5    or aware of these violations of Jail policies.

6            The third factor under *Bell* is the justification for the policy itself.  *Bell*, 441 U.S. at 559.

7    A jail policy on strip searches is not "constitutionally acceptable simply by virtue of jail

8    officials' invocation of security concerns . . . rather the policy must be 'reasonably related' to

9    the [detention facility's] interest in maintaining security."  *Way v. County of Ventura*, 445 F.3d

10   1157, 1161 (9th Cir. 2006) (citations omitted).  Defendants maintain that the "searches were in

11   furtherance of the jail administration's legitimate goal of jail security, which is a valid reason

12   for their use."  (Defs.' Mot. at 14 (citing *Jones*, 393 F.3d at 934-35.))  From this bare assertion,

13   the Court has absolutely no facts to determine whether Defendants' policies were "reasonably

14   related" to maintaining jail security.  Defendants do not provide the Court with specific facts

15   or properly develop the record to demonstrate that a civil detainee, or even a person detained

16   pursuant to the SVPA, needs to be strip searched on a routine basis as alleged by Plaintiff.

17   There is no showing of whether these persons have access to contraband or whether they can

18   transmit such contraband to others.  The record is not developed as to where detainees like

19   Plaintiff are kept and with whom they are kept.  While the Court may speculate that security

20   issues may very well be involved, the Ninth Circuit decision in *Way* precludes reliance on mere

21   blanket assertions of security concerns.

22           Defendants failed to "show any link between their blanket strip search policy and

23   legitimate security concerns for detainees" such as Plaintiff.  *Way*, 455 F.3d at 1161.  In fact,

24   the plain language of the strip search policy appears to indicate that the policy is only to be

25   applied to inmates that have completed arraignment and "pre-arraignment" inmates. *See* Brooks

26   Decl., Ex. "1," Policy I.53.  Here, Plaintiff is neither, he is a civil committee.  While the rights

27   of Plaintiff as a person detained pursuant to the SVPA, may not "necessarily be coextensive

28   with those of all other civilly detained persons," Defendants have failed to articulate the

rationale for applying a strip search policy directed to criminal detainees to Plaintiff. *Hydrick*, 2007 WL 2445998, at *11. Moreover, Defendants have not provided the Court with any information to determine whether there was even a separate search policy for civil committees.

The final factor of the *Bell* balancing test examines the physical location of the search within the prison area. *Bell*, 441 U.S. at 559. Plaintiff contends that the strip searches occurred "in the middle of the floor that was in the [sight] of female guards." (*See* Pls.' Depo. at 14.) As a result, Plaintiff contends that these searches were "embarrassing and humiliating." (*Id.*) Nowhere in Defendants moving papers or response to Plaintiff's Opposition do they dispute that these searches were conducted in front of female officers. Thus, this last factor also supports the unreasonableness of the searches.

Applying the factors set out in *Bell*, under a standard that affords appropriate deference to jail policy, *Bell*, 441 U.S. at 547-58, the Court finds there to be a triable issue of fact as to whether the Jail's blanket strip search policy as set by Defendant Kolender violates Plaintiff's Fourth Amendment rights. However, to the extent that Plaintiff may have a claim for searches that violated the Jail's established policies, those claims cannot be brought in this action because Plaintiff failed to name the jail officials who conducted the searches that allegedly violated the policy. In sum, to the extent that there is a genuine issue of material fact as to whether the strip search policy itself violates Plaintiff's Fourth Amendment rights, the Court **DENIES** Defendants' Motion for Summary Judgment.

### F.   Medical Care Claims

Defendants seek summary judgment of Plaintiff's claim that he was denied adequate medical care while he was housed at GBDF. Claims alleging a failure to provide medical care to pre-trial detainees or civil committees, such as Plaintiff, are required to be analyzed as a denial of substantive due process under the Fourteenth Amendment and not under the Eighth Amendment. *Bell*, 441 U.S. at 535 n.16; *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). However, "[w]ith regard to medical needs, the due process clause imposes, *at a minimum*, the same duty the Eighth Amendment imposes: 'persons in custody ha(ve) the established right not to have officials remain deliberately indifferent to their serious medical

needs.'" *Gibson*, 290 F.3d at 1187 (emphasis added), quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).  The Court will look to Eighth Amendment standards with regard to Plaintiff's inadequate medical care claims.

"Prisoners can establish an Eighth Amendment violation with respect to medical care if they can demonstrate there has been deliberate indifference to their serious medical needs." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks omitted).  Deliberate indifference requires allegation of facts sufficient to demonstrate that a prison official acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" *Gibson*, 290 F.3d at 1187-88, quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")  Moreover, a mere delay in medical treatment, without a showing of resulting

1  substantial harm, is insufficient to support an Eighth Amendment violation.  *Wood*, 900 F.2d

2  at 1335; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

3        Here, Plaintiff alleges that when he arrived at GBDF from Atascadero, jail officials

4  would not allow him to keep some of the medications he brought with him nor would they

5  permit Plaintiff to keep his inhaler in his cell.  (FAC at 5.)  In addition, Plaintiff was not

6  permitted to have ear plugs and he was given a "thin, therapeutically inefficient mattress."  (*Id.*)

7  Plaintiff  testified at his deposition that he was diagnosed with emphysema and jail officials

8  would bring the inhaler to his cell once every twelve hours.  (*See* Pl.'s Depo. at 31.)  Plaintiff

9  did not have any "breathing attacks" while he was held at GBDF.  (*Id.* at 32.)

10        Plaintiff also had an unspecified "itching problem."  (FAC at 5.)  Plaintiff claims that he

11  was not permitted to keep the medication for this problem that was prescribed to him at

12  Atascadero.  (*See* Pl.'s Depo. at 27.)  Instead, Plaintiff was prescribed benadryl which he claims

13  did not help this medical condition.  (*Id.* at 28.)  Plaintiff returned to the medical staff for further

14  treatment at least once a week for the period he was housed at GBDF.  (*Id.* at 28-29.)

15        Because Defendants are the moving parties, they "bear[] the initially responsibility" of

16  identifying those portions of the record which they believe "demonstrate the absence of a

17  genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 256.  In this

18  regard, Defendants have submitted the declaration of Earl Goldstein, M.D.  (*See* Declaration

19  of Earl Goldstein, M.D., in support of MSJ.)  Goldstein declares that he is the Medical Director

20  of the Medical Services Division for the San Diego County Sheriff's Department.  (*Id.* at 1.)

21        According to the declaration of Dr. Goldstein, he has reviewed Plaintiff's medical

22  records for the period of time that he was housed at GBDF, March 20, 2003 to April 24, 2003.[4]

23  (*Id.*)  Dr. Goldstein indicates that Plaintiff was first seen by a jail doctor on March 21, 2003 and

24  was prescribed the following medications: "Lotrimin 30cc, Polytar XI (Tar shampoo), Albuterol

25  Inhaler for 30 days beginning March 22, 2003."  (*Id.* at 2.)  Plaintiff was seen by a jail doctor

26  on April 15, 2003 and "prescribed tar shampoo and Minerin for dry skin."  (*Id.*)  Finally,

27

28

_____
[4]  Defendants have not supplied the Court with a copy of Plaintiff's medical records.

13                                          05cv0310

1    Plaintiff was again seen by a jail doctor on April 17, 2003 and prescribed another Albuterol

2    inhaler for an additional thirty days.  (*Id.*)

3        While Defendants admit Plaintiff's emphysema was a serious medical condition, they

4    contend that there is no genuine issue of material fact in dispute as to whether the other claims

5    regarding inadequate sleep or itchy skin rise to the level of a serious medical condition.

6    Moreover, Plaintiff does not offer any evidence to support his claims that these are serious

7    medical conditions, or that he suffered any physical injury as a result of Defendants' action.

8    Instead, Plaintiff claims in his opposing papers that he suffered "mental and emotional distress."

9    (Pl.'s Opp'n to MSJ at 7.)

10       "Prison officials are deliberately indifferent to a prisoner's serious medical needs when

11   they deny, delay, or intentionally interfere with medical treatment."  *Hallett,* 296 F.3d at 744.

12   However, "[a] defendant is liable for denying a prisoner needed medical care only if he 'knows

13   of and disregards an excessive risk to inmate health and safety.'"  *Gibson*, 290 F.3d at 1187.

14   "In order to know of the excessive risk, it is not enough that the person merely 'be aware of

15   facts from which the inference could be drawn that a substantial risk of serious harm exists,  he

16   must also draw that inference.'"  *Id.* at 1188, quoting *Farmer*, 511 U.S. at 837.  There is no

17   genuine issue of material fact in dispute which, if proven, would support a finding that jail

18   officials were in possession of facts from which an inference could be drawn, or that they

19   actually drew the inference, that Plaintiff had a serious medical condition, other than his

20   emphysema, which was treated with the use of an inhaler every twelve hours.  In addition,

21   Plaintiff was seen at the medical clinic on a number of occasions  and medication was

22   prescribed which defeats his claims of "deliberate indifference."

23       Accordingly, the motion for summary judgment brought by Defendants with respect to

24   Plaintiff's deliberate indifference to a serious medical need claim is **GRANTED**.

25   **G.    Attorney-Client Communication**

26       In his First Amended Complaint, Plaintiff claims that his Sixth Amendment rights were

27   violated by the phones he was forced to use to communicate with his attorney for his

28   commitment proceedings.  (*See* FAC at 6.)  Plaintiff claims there were signs posted, pursuant

1   to Jail policy, next to the phones that state "this area may be monitored or recorded, you have

2   no expectation of privacy when speaking on the telephone." (*Id.*) Defendants claim that this

3   cause of action should be dismissed because "Plaintiff has no evidence that any of his

4   conversations were monitored or recorded." (Defs.' Mot. at 17). Plaintiff claims, regardless

5   of whether or not the conversations were actually recorded, he believed that he was unable to

6   speak freely with his attorneys in fear that his conversations would be recorded and given to the

7   prosecutors in his commitment hearings. (Pl.'s Opp'n at 8.)

8       Again, this issue is identical to that raised in the *Hydrick* case which Defendants have

9   failed to cite to or distinguish. In *Hydrick*, plaintiffs also argued that they could not have

10  private phone conversations with counsel which created an inability to adequately prepare for

11  their commitment proceedings. *Hydrick*, 2007 WL 2445998, at *17. The Ninth Circuit found

12  that these claims are properly analyzed as an access to courts claim as arising under the

13  Fourteenth Amendment. *Id.* (citing *Procunier v. Martinez*, 416 U.S. 396, 419-20 (1974)

14  (overruled on other grounds)). Plaintiff has a statutory right to counsel in commitment hearings.

15  Cal. Welfare & Institutions Code §§ 6602, 6603, 6605(d). While the Court may recognize the

16  need to institute policies for the sake of jail security, Plaintiff's right to communicate privately

17  with his counsel is an "important part" of the "meaningful access" to the courts. *See Hydrick,*

18  2007 WL 2445998, at * 17 (citing *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990)).

19  Defendants argument that Plaintiff does not have actual recordings of these phone calls is

20  simply insufficient to meet their burden to show the absence of a genuine issue of material fact

21  to overcome Plaintiff's allegations that this policy impacted his ability to defend himself in his

22  commitment proceedings. *Id.* Accordingly, Defendants' Motion for Summary Judgment of

23  Plaintiff's Fourteenth Amendment access to courts claim is **DENIED**.

24      **H.    Right to Privacy**

25      Plaintiff claims, and Defendants do not appear to dispute, that when he was housed at

26  GBDF he was forced to use the bathroom and shower in the line of sight of female jail officers.

27  (Pl.'s Opp'n at 9.)  As a result, Plaintiff claims that Sheriff Kolender's policy "caused Plaintiff

28  to be humiliated and degraded" and thus, violated his right to privacy under the Fourteenth

1   Amendment.   (FAC at 7.)   However, Defendants claim that "non-punitive, legitimate

2   government interests include maintaining jail security and effective management of a detention

3   facility." (Defs.' Mot. at 17.)  They also claim that there are "obvious" interests in maintaining

4   jail security and thus, "Plaintiff's right to privacy was not violated." (*Id.*).  Defendants fail to

5   inform the Court of the specific "obvious" reasons for the need for this lack of privacy for a

6   civil detainee.[5]  In their reply, Defendants argue that the Ninth Circuit in *Grummett v. Rushen*,

7   779 F.2d 491, 494 (9th Cir. 1985) found that only "gratuitous" invasions of privacy would

8   violate the Fourteenth Amendment.  That case is distinguishable from the case before this Court

9   because it involved the right to privacy as applied to prisoners and Plaintiff is not a prisoner,

10   he is a civil committee.

11       As recently stated by the Ninth Circuit, "it is clearly established that the Fourteenth

12   Amendment protects a sphere of privacy, and the 'most basic subject of privacy . . . the naked

13   body.'" *Hydrick*, 2007 WL 2445998, *18.   In *Hydrick*, the Ninth Circuit analyzed the policies

14   and procedures governing the treatment of SVP's at Atascadero State Hospital and found that

15   they could not dismiss the plaintiff's privacy claims in that case, which appear to be very

16   similar to Plaintiff's claims, because neither side had the opportunity to develop the factual

17   record. *Id.* at *19.

18       While this Court recognizes that "circumstances of institutional life demand that privacy

19   be limited," it is the Defendants' burden to demonstrate a justification for allowing female jail

20   officers to observe Plaintiff using the bathroom.  *Id.*  It is "clearly established that gratuitous

21   invasions of privacy violate the Fourteenth Amendment."  *Id.*  Here, Defendants have had the

22   opportunity to develop the record in support of their motion for summary judgment but instead,

23   they have only offered the Court conclusory statements regarding jail security.  There simply

24   is no evidence submitted by Defendants to contradict Plaintiff's assertions that his privacy

25   rights were violated.  Accordingly, the Court finds there is a disputed genuine issue of material

26

27 _____
        [5] In the Declaration of Wayne Brooks, he maintains that the shower area is, in fact, private as
28   the shower is surrounded by a brick wall that is "about head high." (*See* Brooks Decl. at ¶ 10.)
    However, there is no mention of the bathroom facilities and whether they can be seen by jail officials,
    including female officers.

05cv0310

1   fact regarding Plaintiff's Fourteenth Amendment privacy claims and thus, Defendants' Motion

2   for Summary Judgment as to these claims is **DENIED**.

3       **I.    Right to Personal Security**

4         In his First Amended Complaint, Plaintiff alleges, and Defendants do not dispute, that,

5   pursuant to the policy established by Sheriff Kolender, when he was transferred from GBDF

6   to the courthouse for his commitment proceedings, he was placed on a bus with penal detainees.

7   (FAC at 7.)  While Plaintiff was physically separated from other detainees, he was "spat upon"

8   by another detainee through the wire mesh.  Plaintiff could not remove the spit from his neck

9   because he was restrained by chains.  (*Id*. at 7-8).  Defendants seek summary judgment of this

10  Fourteenth Amendment claim because they claim that "no one physically touched him (other

11  than spitting on the back of his neck), and Plaintiff was not injured."  (Defs. Mot. at 18.)

12  Notably, in applying this argument, Defendants do not cite to any case authority nor do they

13  dispute that Plaintiff was placed in shackles on the bus and spat on by other detainees.

14        Plaintiff's allegations, once again, are similar to those brought by plaintiffs in *Hydrick*.

15  In *Hydrick,* the plaintiffs claimed that prison officials at Atascadero State Hospital knew that

16  other detainees, those not confined as sexually violent predators, were contaminating the

17  plaintiffs' food "with spit and other unsanitary taint."  *See Hydrick*, 2007 WL 2445998, at *14.

18  The Ninth Circuit found that it would not be appropriate to dismiss these claims if the plaintiffs

19  could later prove that the Atascadero defendants knew of these conditions but failed to do

20  anything about these problems.  *Id.* at *15 (citing to *Youngberg*, 457 U.S. 307, 315-16 (1982))

21  (establishing a right to "personal security" for involuntarily committed persons)).

22        Defendants do attach to the declaration of Lieutenant Brooks the transportation policy

23  of "inmates to and from court" that was in effect in 2003.  (Brooks Decl. at ¶ 9, Exhibit "3," San

24  Diego County Department Detention Services Bureau Policy and Procedure number I.57.)

25  Lieutenant Brooks declares that "Mr. Bacon would be transported" pursuant to this policy. (*Id.*)

26  However, it is unclear how this transport policy would have applied to Plaintiff.  It merely

27  references how to transport "high risk inmates transports" and "other transports."  (*Id.*)  The

28  Court can only assume, as Defendants do not clarify, that "other transports" include persons like

1   Plaintiff housed at the Jail pending civil commitment hearings.  Nowhere do the Defendants
2   allege that Plaintiff was considered a "high risk" inmate and thus, the policy states, in the case
3   of "other transports," only "one deputy will generally transport no more than one inmate." (*Id.*,
4   Transportation Policy I.57 III(C))

5        In their reply, Defendants characterize Plaintiff's arguments by stating "Plaintiff seems
6   to feel that he had the right to be transferred to and from court in a private car with no other
7   prisoners." (*See* Defs.' Reply at 9.)  Defendants go on to argue that "even if this were true (the
8   right to be transported with no other inmates), [Plaintiff] has not offered evidence that doing so
9   was reasonable given the Sheriff's resources." (*Id.*)  On the one hand Defendants have attached
10  a declaration indicating that the policy would require Plaintiff to be transported without any
11  other "transports" but their argument would also imply that the practice was to transfer Plaintiff
12  with other inmates.  The policy itself appears to be silent on the difference in transporting a
13  penal detainee versus a civil detainee.

14       Even if there is not an explicit policy, Plaintiff may establish municipal liability upon
15  a showing that there is a permanent and well-settled practice by the municipality which gave
16  rise to the alleged constitutional violation. *See City of St. Louis v. Praprotinik*, 485 U.S. 112,
17  127 (1988); *Navarro v. Block*, 72 F.3d 712, 714-15 (9th Cir. 1996).  Here, the Defendants' own
18  argument implies that there is a practice by the San Diego County Sheriff to transport penal
19  detainees with civil committees.  While they may have physically separated Plaintiff from other
20  criminal detainees when he was transported on the bus, the facts before the Court indicate that
21  Defendants' transportation practices allowed criminal detainees in close enough proximity to
22  spit on Plaintiff which could violate Plaintiff's right to personal security. *See Hydrick*, 2007
23  WL 2445998, at * 15.  In addition, Defendants do not argue that they were unaware of the
24  conditions suffered by Plaintiff while he was transported with penal detainees.  The Court finds
25  that there is a triable issue of material fact regarding whether the County's transportation
26  policies and customs violated Plaintiff's constitutional rights, and thus, Defendants' Motion for
27  Summary Judgment of Plaintiff's Fourteenth Amendment right to personal security claim is
28  **DENIED**.

18

05cv0310

## J.    Fourteenth Amendment - Equal Protection Claims

Plaintiff claims that his right to equal protection was violated because other civil detainees were treated more favorably than detainees held pursuant to the SVPA. Defendants move for summary judgment of this claim on the ground that it was proper to house Plaintiff in the County Jail and "Court-approved place for confinement of inmates awaiting hearings on their SVP status." (Defs.' Mot. at 20.)

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.* 473 U.S. 432, 439 (1985). "Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Even though Plaintiff cannot claim to be a member of a "suspect class," the court may apply a "heightened scrutiny standard" when evaluating a claim of equal protection violation under California's Sexually Violent Predator Statute. *Hydrick*, 2007 WL 2445998, at *16 (citations omitted). Heightened scrutiny is applied where a fundamental liberty interest, such as "liberty interest in freedom from bodily restraint and personal security," is at stake. *Id.* (citing *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942)).

Here, Plaintiff alleges that the conditions of confinement he endured were more "restrictive, punitive and degrading" when compared to the conditions of confinement for other civil committees. (FAC at 11.)  Defendants argue that Plaintiff has failed to "identify the policies" which he claims violated his right to equal protection. The Court agrees. Plaintiff offers no specific allegation with regard to the differences in treatment at GBDF between general civil committees and SVPs. In *Hydrick*, the plaintiffs listed specific examples of how they were treated differently than other civil committees and the Ninth Circuit held that arbitrary and irrational policies that lead to harsher treatment for SVPs may violate the plaintiffs' right to equal protection. *Hydrick*, 2007 WL 2445998, at * 16-17.  In this case,

19

1    Plaintiff has not alleged any "arbitrary or irrational" policies outlining the differences in

2    treatment between a regular civil committee and an SVP.  *Id.* at *17.  Accordingly, the Court

3    **GRANTS** Defendants' Motion for Summary Judgment with regard to Plaintiff's equal

4    protection claims.

5            **K.    Qualified Immunity**

6            In his moving papers, Defendant Kolender seeks to be "shielded from liability by the

7    doctrine of qualified immunity" solely on the grounds that at the time Plaintiff was housed in

8    the county jail the Sheriff believed that it was lawful and appropriate to house SVP in the

9    county jail pursuant to *Munoz v. Kolender*, 208 F. Supp. 2d 1125 (S.D. Cal. 2002)[6].

10           First, the Court must deny Defendant Kolender's request for qualified immunity in his

11   official capacity.  A municipality, such as the County of San Diego, and its employees sued in

12   their official capacity, like Sheriff Kolender, "may not assert a qualified immunity defense to

13   liability under Section 1983."  *Hallstrom v. City of Garden City*, 991 F.2d 1473 (*citing Owen*

14   *v. City of Independence*, 445 U.S. 622, 638 (1980)).

15           Thus, the only remaining request for qualified immunity comes from Sheriff Kolender's

16   claims that he was under the reasonable belief that it was proper to house Plaintiff at the County

17   Jail pursuant to the *Munoz* decision.  (Defs.' Mot. at 19.)  This is generally the "second step"

18   of the qualified immunity analysis.  The first step is generally the determination as to whether

19   "taken in the light most favorable to the party asserting the injury. . . the facts alleged show the

20   officer's conduct violated a constitutional right."  *See Saucier v. Katz*, 533 U.S. 194, 201.

21   However, because the Defendants argue the second step in their moving papers, the Court will

22   address the next sequential step in the analysis.  This step is whether the "contours of the

23   [clearly established right] must be sufficiently clear that a reasonable official would understand

24   that what he is doing violates that right."  *Id.* at 202.

25           Here, Defendants maintain that they were housing Plaintiff at the Jail in accordance with

26

27           [6] In their reply brief, Defendants also seek qualified immunity with regards to Plaintiff's Sixth
     Amendment claim and further claim that Defendant Kolender is entitled to "absolute quasi-judicial
28   immunity from liability."  (Defs.' Reply at 1, 4, 8.)  The Court will not consider these last two
     arguments as it is well settled that issues cannot be raised for the first time in a reply brief.  *See Alaska
     Center for Environment v. U.S. Forest Serv*., 189 F.3d 851, 858 n. 4 (9th Cir. 1999).

a decision decided by the District Court for the Southern District of California in 2002 in which Defendant Kolender was also the named Defendant. *See Munoz*, 208 F. Supp. 2d at 1144. In the *Munoz* decision, which was rendered a year before the facts alleged in Plaintiff's case, the trial court determined that Defendant Kolender was not violating the constitutional rights of the SVP plaintiff by housing him at the County Jail and subjecting him to strip searches. *Id.* at 1147. Thus, this Court finds that it would be reasonable for Defendant Kolender to rely on this decision to house Plaintiff at the Jail pending his commitment proceedings and to conduct strip searches. *Saucier*, 533 U.S. at 202. Accordingly, Defendant Kolender is entitled to qualified immunity as to the decision to house Plaintiff at the Jail pending his commitment proceedings and in applying the strip search policy to him. Since these are the only remaining claims against Kolender individually, he is entitled to judgment in his individual capacity.

# VI.

## Conclusion and Order

Based on the foregoing, the Court hereby:

1)      **DENIES** Plaintiff's Motions to Suppress [Doc. Nos. 71, 73];

2)      **GRANTS** Defendant Kolender's Motion for Summary Judgment based on qualified immunity as to Plaintiff's claims seeking to hold Kolender liable in his individual capacity [Doc. No. 65];

3)      **DENIES** Defendant Kolender's Motion for Summary Judgment as to Plaintiff's claims seeking to hold Kolender liable in his official capacity [Doc. No. 65];

4)      **DENIES** Defendant County of San Diego's Motion for Summary Judgment on Plaintiff's claims of *Monell* liability [Doc. No. 65];

5)      **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Ex Post Facto and Double Jeopardy claims [Doc. No. 65];

6)      **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Amendment unreasonable search claims [Doc. No. 65];

7)      **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's medical

05cv0310

care claims [Doc. No. 65];

8)      **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment access to courts claim [Doc. No. 65];

9)      **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment right to privacy claim [Doc. No. 65];

10)    **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment right to personal security claims [Doc. No. 65]; and

11)    **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment equal protection claims [Doc. No. 65].

**IT IS SO ORDERED.**

DATED:  September 6, 2007

Honorable Barry Ted Moskowitz
United States District Judge

05cv0310