# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD C. BACON, JR.,<br><br>                    Plaintiff,<br><br>vs.<br><br>WILLIAM B. KOLENDER, San Diego Sheriff, and COUNTY OF SAN DIEGO,<br><br>                    Defendants. | Civil No.   05cv0310 BTM (PCL)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT [Doc. No.129] PURSUANT TO FED.R.CIV.P. 56; AND**<br><br>**(2) ISSUES ORDER TO SHOW CAUSE WHY PARTIAL JUDGMENT SHOULD NOT BE ENTERED FOR COUNTY OF SAN DIEGO AND SHERIFF KOLENDER IN HIS OFFICIAL CAPACITY** |

**I.**

**Procedural Background**

This matter comes before the Court on Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 129]. The Court has considered the papers filed in support of Defendants' motion, Plaintiff's Opposition, Defendants' Reply, as well as all relevant pleadings and documents in the Court's file. For the following reasons, the Court **GRANTS** Defendants' Motion.

## II.

## Procedural History

Before the Court is Plaintiff Arnold Bacon's First Amended Complaint ("FAC"), filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983 [Doc. No. 45]. On December 8, 2006, Defendants filed their first Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 65]. After reviewing all papers filed, both in opposition to and in support of Defendants' Motion, the Court granted in part and denied in part Defendants' Motion. *See* Sept. 6. 2007 at 21-22. However, at the time of trial, Defendants expressed confusion as to the claims that remained against Defendant Kolender in his individual capacity. Thus, the Court granted Defendants' request for a continuance of the trial and permitted leave for Defendants to file an additional Motion for Summary Judgment to resolve the remaining issues prior to trial. *See* June 23, 2008 Order at 1.

On July 25, 2008, Defendants filed their second Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 129]. The Court advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[1] Plaintiff filed his Opposition [Doc. No. 133], to which Defendants have Replied [Doc. No.137].[2] Moreover, Plaintiff's First Amended Complaint is verified under penalty of perjury. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under FED.R.CIV.P. 56.). This matter has been submitted on the papers for determination without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1.

---

[1] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)).

[2] While this case was randomly referred to the Honorable Magistrate Judge Peter C. Lewis pursuant to 28 U.S.C. § 636(b)(1)(B) for disposition, the Court has determined that a Report and Recommendation regarding the disposition of Defendants' pending Motion for Summary Judgment is unnecessary. *See* S. D. CAL. CIVLR 72.3(a)

## III.

## Factual Allegations

From March 20, 2003 to April 24, 2003, Plaintiff was temporarily moved from Atascadero State Hospital ("Atascadero") to the San Diego Central Detention Facility ("CDF"), a correctional facility operated by the San Diego County Sheriff's Department. However, Plaintiff only spent a few hours at CDF and spent the majority of his time housed at George Bailey Detention Facility ("GBDF") which is also operated by the San Diego County Sheriff's Department. (*See* FAC at 1, 4; Pl.'s Depo. at 10.)

San Diego County Sheriff Deputies strip searched Plaintiff upon arrival to CDF, again when he was transported to GBDF, each time he was transported from GBDF to court for his civil commitment hearings, and at least one time each week while housed at GBDF. (*See* FAC at 3; Pl.'s Depo. at 19-20.) Specifically, Plaintiff claims that during these searches he was required to "remove all his clothes, shake his hair out with his fingers, run a finger around his mouth, pull his penis up for inspection," and "bend over and put his buttocks apart while coughing three times." (FAC at 4.) Defendants believed these searches to be "proper according to County Jail policies that were in effect in 2003." (Defs.' Motion at 2; Defs.' Exhibit "C," Declaration of Lieutenant Wayne Brooks at ¶ 8.) On at least two occasions, Plaintiff's strip searches were conducted in the view of female correctional officers. (*See* Pl.'s Depo. at 23.) Plaintiff also maintains that he was forced to use the bathroom and shower in the line of sight of female correctional officers. (*See* FAC at 7.)

In addition, Plaintiff alleges that he was handcuffed to a penal detainee during transportation to and from GBDF and on one occasion he was "spat" upon by a penal detainee on the bus. (*Id.* at 8.) Because Plaintiff's movements were constrained by the handcuffs, he was unable to remove the spit from his neck for over thirty minutes. (*Id.*)

When Plaintiff arrived at the CDF, jail officials determined that he would not be permitted to keep all the medicines that had been prescribed for him at Atascadero. (*Id.* at 5.) Specifically, Plaintiff claims to have an "itching" problem, as well as the need for an inhaler. (*Id.*) Defendants acknowledge that some of Plaintiff's medications were not stocked at GBDF

but he was prescribed Benadryl along with a medication for dry skin. (*Id.*, Pl.'s Depo. at 25-30; Defs.' Exhibit "E," Declaration of Dr. Earl Goldstein at ¶¶ 5-7.) While Plaintiff was not permitted to have his inhaler with him at all times, Defendants brought the inhaler to Plaintiff every twelve (12) hours. (Pl.'s Depo. at 31.) Plaintiff did not have any "breathing attacks" at GBDF. (*Id.* at 32.) Plaintiff also contends that he was not permitted to have ear plugs while he was housed at GBDF, and as a result, he was not able to get as much sleep as he normally would while housed at Atascadero. (*Id.* at 30.)

Finally, when Plaintiff attempted to use the telephone to call his attorney, a warning sign was placed on the telephone which stated that "the telephones in this area may be monitored or recorded" and that inmates "have no expectation of privacy when speaking on the phones." (*See* FAC at 6; *see also* Pl.'s Depo. at 33-34.)

## IV.

### Motion for Summary Judgment per FED.R.CIV.P. 56(c)

Defendants seek summary judgment on the grounds that: (1) there are no genuine issues of material facts to support Plaintiff's constitutional claims; and (2) Sheriff Kolender is entitled to qualified immunity as to all remaining claims.

**A.      Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly

1  supported motion for summary judgment, the nonmoving party "must point to some facts in the
2  record that demonstrate a genuine issue of material fact and, with all reasonable inferences
3  made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]."
4  *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P.
5  56; *Celotex*, 477 U.S. at 323).

### B.   Defendant Kolender - Individual Liability

As articulated in the Court's previous Order, there are only two named Defendants in this action, Sheriff Kolender and the County of San Diego. Defendant Kolender moves for summary judgment as to all claims against him in his individual capacity.

A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (1988)

Defendant Kolender argues that Plaintiff is seeking to hold him personally liable on all the claims in his First Amended Complaint solely in his capacity as a supervisor. Plaintiff must allege personal acts by Defendant Kolender which have a direct causal connection to the constitutional violation at issue. *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986). Section 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of the plaintiff's constitutionally protected rights. *Duffy*, 588 F.2d at 743.

Defendants argue that Sheriff Kolender is entitled to summary judgment in his individual capacity because "Plaintiff has not offered any evidence that Sheriff Kolender was personally responsible for any acts or omissions regarding Plaintiff's custody in County Jail." (Defs.' Mot. at 9.) However, Plaintiff does allege that Sheriff Kolender implemented the policies which he

alleges violated his constitutional rights. (FAC at 3-10.) Defendants claim that Plaintiff "admitted in his deposition that the Sheriff himself was not involved in his housing situation in County Jail in 2003." (Defs.' Mot. at 9, *citing* Pl.'s Depo 46:16-25.) In fact, Plaintiff testifies in his deposition that he is seeking to hold Kolender personally liable for the alleged constitutional violations caused by the policies implemented by Kolender as the "final policymaker for the County in regards to the jail." (Pl.'s Depo. at 46:20-25.) There is no admission by Plaintiff that Sheriff Kolender was not ultimately responsible for the alleged constitutional violations.

Defendant Kolender maintains that he was not responsible for any of the policies because he "delegated the responsibility for reviewing and approving a bureau's policies and procedures to the Assistant Sheriff in charge of the particular bureau." (Kolender Decl. ¶ 5.) In this case, Defendant Kolender surmises that he would have delegated the policies that pertain to Plaintiff's status to the Assistant Sheriffs in charge of the Detention Services Bureau and the Court Services Bureau. (*Id.*) Pursuant to California statutory law "the sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it." California Govt. Code § 26605. Defendants cite to no authority by which the Sheriff for the County of San Diego can waive this "exclusive" authority by delegating tasks such as promulgating and implementing policies and procedures to other staff members.

Accordingly, the issue remains whether there is a genuine issue of material fact as to whether the policies promulgated by Sheriff Kolender violated Plaintiff's constitutional rights. Accordingly, the Court must now determine whether Defendant Kolender is entitled to summary judgment on Plaintiff's: (1) Fourteenth Amendment access to courts claim; (2) Fourth Amendment strip search claim; (3) Right to Personal Security claim; and (4) Right to Privacy claim.

### B. Fourteenth Amendment access to courts claim

In his First Amended Complaint, Plaintiff claims that his Sixth Amendment rights were violated by the phones he was forced to use to communicate with his attorney for his commitment proceedings. (*See* FAC at 6.) Plaintiff claims there were signs posted, pursuant

to Jail policy, next to the phones that stated "this area may be monitored or recorded, you have no expectation of privacy when speaking on the telephone." (*Id.*)

In the Court's previous Order, it was found that these claims were, and are, properly analyzed as an access to courts claim arising under the Fourteenth Amendment. *See* Sept. 6, 2007 Order at 15 (citing *Hydrick v. Hunter*, 500 F.3d 978, 999 (9th Cir. 2007) ([w]hile the Sixth Amendment, by its express language, protects those in *criminal* proceedings, the Fourteenth Amendment protects all detainees against governmental interference in their right of access to courts."))

Defendants argue that Plaintiff must be able to show "actual injury" in order for the Court to find an access to courts violation. (*See* Defs.' Mot. at 15-16; citing *Lewis v. Casey*, 518 U.S. 343 (1996)).  The Ninth Circuit has held that a civil committee, like a prisoner, must allege an injury "such as inability to file a complaint or defend against a charge" arising from his denial of access to the courts claim. *Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (holding that the Supreme Court's decision in *Lewis* requiring an "actual injury" is correctly applied to a civil committee held as a sexually violent predator.)

In *Lewis,* in order to establish a violation of the right to access to the courts, an inmate must allege facts sufficient to show that:  (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a result. *Id.* at 353-55. An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

Plaintiff argues that he was hindered in his ability to speak with his attorney to prepare for his commitment proceedings because he could not be "frank and open" due to his fear of being recorded. (Pl.'s Opp'n at 8.)  But he fails to show how this resulted in an "actual injury." In other words, he offers no facts to support that there was some issue or piece of evidence he would have been able to provide his attorney that would have resulted in a different outcome in his commitment proceedings.  In addition, Plaintiff does not supply the Court with any indication that his attorney did not have all the information necessary to properly represent him

during his commitment proceedings. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Access to Courts claim.

### C. Fourth Amendment claims - Strip Searches

Plaintiff claims that his Fourth Amendment rights were violated when he was strip searched on a number of occasions while he was housed at the Jail. (*See* FAC at 4.) The Court analyzed the reasonableness of the strip searches by looking to established case law as it pertained to pretrial detainees, the closest proximation to Plaintiff's status as a civil committee. (*See* Sept. 6, 2007 Order at 8-9; *citing Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). First, there was a finding that the policy established by the Sheriff's Department to strip search pretrial detainees was being violated by the jail personnel who conducted the strip searches. (*Id.* at 9.) However, because Plaintiff did not name any of those individuals as Defendants, those claims could not go forward in this action. (*Id.* at 10.) Second, the Court found that Defendants had not met their burden to demonstrate that the policy itself did not violate Plaintiff's constitutional rights. (*Id.*, citing *Bell*, 441 U.S. at 559.) As the Court stated, a jail policy on strip searches is not "constitutionally acceptable simply by virtue of jail officials invocation of security concerns ... rather the policy must be 'reasonably related' to the [detention facility's] interest in maintaining security." (*Id.*, citing *Way v. County of Ventura*, 445 F.3d 1157, 1161 (9th Cir. 2006) (citations omitted.)) In the Defendants' previous motion, they had failed to develop the record to demonstrate a link "between their blanket strip search policy and legitimate security concerns for detainees." (*Id.*, citing *Way*, 455 F.3d at 1161.

In this Motion, Defendants have now provided the Declaration of Commander John Ingrassia, former Facility Commander at the George Bailey Detention Facility. In this Declaration, Commander Ingrassia sets forth specific facts as to why a strip search for an inmate or detainee that has been outside the control of the San Diego County Jail is "crucial for jail safety and security." (*See* Decl. of J. Ingrassia at 4-6.) Specifically, the concern by Jail officials is loss of control when the inmate or detainee is sent to Court or is transported from State prison or hospital.

/ / /

Commander Ingrassia states in his declaration that the policy to strip search inmates or detainees such as Plaintiff who were held in protective custody was due to the fact that they had a history of finding "weapons and contraband on protective custody inmates." (Decl. of J. Ingrassia at 5.) Even if Plaintiff can show that he did not have a history of having weapons or contraband, the Court finds that the Defendants strip search policy was "'reasonably related' to [George Bailey Detention Facility's] interest in maintaining security," *Way*, 445 F.3d at 1161. Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Amendment strip search claims.

### D. Right to Personal Security

In his First Amended Complaint, Plaintiff alleges that, pursuant to the policy established by Sheriff Kolender, when he was transferred from GBDF to the courthouse for his commitment proceedings, he was placed on a bus with penal detainees. (FAC at 7.) While Plaintiff was physically separated from other detainees, he was "spat upon" by another detainee through the wire mesh. Plaintiff could not remove the spit from his neck because he was restrained by chains. (*Id*. at 7-8.) Defendant Kolender seeks summary judgment of this Fourteenth Amendment claim because jail staff "took reasonable precautions to protect Plaintiff's personal security." (*See* Def.'s Mot. at 19.)

As the Court stated in its previous Order, Plaintiff's allegations are very similar to those brought by plaintiffs in *Hydrick*. In *Hydrick,* the plaintiffs claimed that prison officials at Atascadero State Hospital knew that other detainees, those not confined as sexually violent predators, were contaminating the plaintiffs' food "with spit and other unsanitary taint." *See Hydrick*, 500 F.3d at 996. The Ninth Circuit found that it would not be appropriate to dismiss these claims if the plaintiffs could later prove that the Atascadero defendants knew of these conditions but failed to do anything about these problems. *Id.* at 996-97 (citing to *Youngberg*, 457 U.S. 307, 315-16 (1982)) (establishing a right to "personal security" for involuntarily committed persons)).

/ / /

/ / /

1    Here, Defendants maintain that they adopted several measures to protect Plaintiff when
2    transporting him with penal detainees from the jail to the courthouse.  Specifically, Defendant
3    Kolender maintains that they loaded penal detainees and civil committees separately onto the
4    bus and separated the two groups on the bus by placing the civil committees in an area enclosed
5    by steel partitions.  (*See* Billick Decl. at ¶¶ 6-9.)   However, Plaintiff maintains that he was
6    "handcuffed to a penal detainee" and "spat upon by another."  (Pl.s' Opp'n at 10.)  Even if
7    Plaintiff were able to prove these allegations, he has not demonstrated or provided the Court
8    with any evidence to overcome Defendant Kolender's assertions that the policy was to transport
9    individuals such as Plaintiff in a manner which would keep them separate from penal detainees.
10   Plaintiff's allegations speak to the issue of whether individual officers may have violated the
11   Department's policies when they transported Plaintiff to the Court.  Plaintiff has not named any
12   of these individual officers in this action.  In order for Plaintiff to hold Defendant Kolender
13   liable for the violation of the Department's policy, he would have to show some personal acts
14   on the part of Defendant Kolender to show that he knew his officers were violating the policy.
15   *See Sanders*, 794 F.2d at 483. Plaintiff has offered no evidence to even suggest, let alone prove,
16   that Defendant Kolender "turned a blind eye to the conduct of other persons" detained at the
17   jail or to the conduct of his officers who fall under his command.  *See Hydrick*, 500 F.3d at 996.
18   Accordingly, Defendant Kolender's Motion for Summary Judgment as to Plaintiff's
19   Fourteenth Amendment right to personal security claim is **GRANTED.**

20   **E.    Right to Privacy**

21   In his First Amended Complaint, Plaintiff claims that his right to privacy under the
22   Fourteenth Amendment was denied when he was "forced" to use the bathroom and showers
23   "where he could be viewed by male and female guards."  (FAC at 7.)  Defendant argues that
24   there was no violation because jail officials took steps to provide inmates with some barriers
25   to protect their privacy and guards were required to have some view of the bathroom and
26   shower areas for security reasons.  (Ingrassia Decl. ¶ 5.)
27   / / /
28   / / /

"The Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . the naked body.'" *Hydrick*, 500 F.3d at 1000 (citing *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985). However, the Ninth Circuit has also recognized that the "circumstances of institutional life demand that privacy may be limited." *Id.* Here, Defendants have supplied evidence to show that the toilets were "protected by a three-foot high wall" which meant that only the shoulders and head of an inmate could be viewed by a guard while they were using the bathroom. (Ingrassia Decl. ¶ 5.) In addition, the toilet could not be seen by other inmates in the bunk area. (*Id.*) Defendants also state that it is necessary for guards to be able to see into both the toilet and shower areas because "many inmate assaults have occurred in the bathroom area, and deputies must be able to view this area to prevent assaults and to quickly stop them when they occur." (*Id.*)

In response, Plaintiff argues that he should have been placed in administrative segregation because he would have had more privacy in the bathroom and shower areas. (Pl.'s Opp'n at 9.) He further claims that Defendants fail to mention that there is no wall providing privacy when using the urinals. (*Id.*) However, these facts fall short to overcome Defendants' evidence supporting the need for institutional security.

Courts have long recognized that the constitutional rights of pretrial detainees may be limited in the interests of jail institutional security and order. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988). Here, Defendant Kolender has adequately demonstrated "legitimate, non punitive interests" justifying their policies of keeping bathroom and shower areas under surveillance. *Id.* Moreover, there are no allegations, let alone any evidence, that would show that any of the policies allowing some invasion of privacy were "gratuitous." *Hydrick*, 500 F.3d at 1000 (citing *Grummett*, 779 F.2d at 494.)) Finally, even if female guards were in a position to view Plaintiff's use of the bathroom and use of other areas of the jail, he has not shown that there was any evidence of any behavior by a female guard that was "degrading." *Michenfelder v. Sumner*, 860 F.2d at 334 ("[A]ssigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant

court interference.")) Accordingly, Defendant Kolender's Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment right to privacy claim is **GRANTED.**

### F. Qualified Immunity

Defendant Kolender seeks qualified immunity on the remaining causes of action. In the Court's previous Order, Defendant Kolender has already been granted qualified immunity with respect to the decision to house Plaintiff in the jail. (*See* Sept. 6, 2007 Order at 21.) Because the Court has found no other violation of Plaintiff's constitutional rights by Defendant Kolender, the Court need not reach any issues regarding qualified immunity as to these claims. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## V.

## Order to Show Cause - County of San Diego

In *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the United States Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Here, because the Court found that some of the policies implemented by Sheriff Kolender did not violate Plaintiff's constitutional rights, it may be appropriate to enter judgment on these claims in favor of the County of San Diego as well. However, the County of San Diego did not move for summary judgment in the motion currently pending before the Court. Accordingly, the Court will issue an Order to Show Cause why judgment should not be entered in favor of the County of San Diego, and Sheriff Kolender in his official capacity, as to the claims addressed in this motion so that both sides may brief the issue prior to trial.

///

If the Court does enter Judgment following the Order to Show Cause, the sole remaining issue against the County of San Diego and Sheriff Kolender in his official capacity that will be decided at trial is the decision to house Plaintiff with penal detainees in 2003. *See Jones*, 393 F.3d at 933 (holding that a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive.)[3]

## VI.
## Conclusion and Order

Based on the foregoing, the Court hereby:

1) **GRANTS** Defendant Kolender's Motion for Summary Judgment as to Plaintiff's Access to Courts claim [Doc. No. 129];

2) **GRANTS** Defendant Kolender's Motion for Summary Judgment as to Plaintiff's Fourth Amendment strip search claims [Doc. No. 129];

3) **GRANTS** Defendant Kolender's Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment Right to Personal Security claims [Doc. No. 129];

4) **GRANTS** Defendant Kolender's Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment Right to Privacy claims [Doc. No. 129]; and

5) the Court **ORDERS** Plaintiff to show cause *no later than January 30, 2009* why summary judgment should not be entered on behalf of the County of San Diego, and Sheriff Kolender in his official capacity, as to Plaintiff's access to courts, Fourth Amendment strip search, Fourteenth Amendment right to personal security and Fourteenth Amendment right to privacy claims. Plaintiff must submit his moving papers by January 16, 2009 to the Court and Defendants must file their reply, if any, by January 23, 2009.

/ / /

/ / /

---

[3] The Court notes that neither Defendant Kolender in his official capacity nor the County of San Diego are entitled to qualified immunity. A municipality, such as the County of San Diego, and its employees sued in their official capacity, like Sheriff Kolender, "may not assert a qualified immunity defense to liability under Section 1983." *Hallstrome v. City of Garden City*, 991 F.2d 1473 (citing *Owen v. City of Independence*, 445 U.S. 622, 638 (1980)).

No oral argument is necessary as the Court will take the matter under submission on January 30, 2009.

**IT IS SO ORDERED.**

DATED:  December 18, 2008

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge